# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 16, 2014

## STATE OF TENNESSEE v. MICHAEL CROCKETT

**Appeal from the Circuit Court for Rutherford County**
**No. F70116     David M. Bragg, Judge**

_____

**No. M2013-02744-CCA-R3-CD - Filed May 18, 2015**

_____

Defendant, Michael Crockett, was indicted by the Rutherford County Grand Jury for third offense driving on a suspended license, possession of a weapon by a convicted felon, and theft over $500. Defendant filed a pre-trial motion to suppress evidence obtained from the traffic stop and subsequent search of his vehicle. In his motion, Defendant asserted that: 1) probable cause did not exist to conduct a traffic stop of Defendant's vehicle; 2) the duration of the stop was unreasonable and resulted in an unlawful detention of Defendant; and 3) the canine sweep of Defendant's vehicle was improper. Following a hearing, the trial court denied Defendant's motion. Defendant subsequently entered a guilty plea to possession of a weapon by a convicted felon. Pursuant to a plea agreement, Defendant was sentenced to three years to be served in the Tennessee Department of Correction. As part of his plea, Defendant reserved a certified question of law, in which he challenges the trial court's ruling on his motion to suppress. Having reviewed the parties' briefs and the record before us, we conclude that the trial court did not err by denying Defendant's motion to suppress, and we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Kelly Young, Nashville, Tennessee, for the appellant, Michael Crockett.

Herbert H. Slatery III, Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Jennings Jones and Shawn Puckett, Assistant District Attorneys General, for the appellee, the State of Tennessee.

**OPINION**

*Motion to suppress*

A.      Preliminary hearing testimony

At a hearing on Defendant's motion to suppress, the parties agreed to make the transcript of Defendant's preliminary hearing an exhibit to the hearing. At the preliminary hearing, Officer Chris Phillips, of the Murfreesboro Police Department, testified that on January 30, 2013, at approximately 2:00 p.m., he stopped Defendant's vehicle on Park Avenue after he observed that Defendant was not wearing a seatbelt in violation of Tennessee Code Annotated section 55-9-603(a)(1), and there was a black cover over one of Defendant's taillights in violation of Murfreesboro city code section 32-1005. Officer Phillips testified that he approached Defendant's vehicle and asked for his driver's license, proof of insurance, and registration. Officer Phillips observed that Defendant's license stated that it was for identification only. Officer Phillips testified that Defendant appeared nervous, and "[Defendant] was breathing very rapidly, and also when he handed [Officer Phillips] his ID his hand was shaking." Officer Phillips asked if Defendant had any illegal items in his vehicle. Officer Phillips testified that Defendant "eventually" told him that if he had any illegal items, they would be under the hood of his vehicle. Defendant opened the hood of his vehicle, and Officer Phillips observed an empty box. Officer Phillips testified that Defendant told him "that's where he usually kept a firearm and marijuana."

Officer Phillips asked Defendant for his consent to search the vehicle, and Defendant denied consent. Officer Phillips then called for officer assistance. Other officers, including canine officer Mark Moghaddam, arrived on the scene within approximately two minutes. Officer Moghaddam used his canine to conduct an "air sniff" of Defendant's vehicle. The canine alerted to the odor of narcotics by scratching the passenger side of the vehicle. Officers then searched the vehicle and found a loaded Glock 27 handgun inside the vehicle. Defendant told Officer Phillips that he had the gun for his protection. Officer Phillips ran a check on Defendant's driver's license and learned that it was suspended. He also learned that Defendant had a prior conviction for facilitation of first degree murder.

B.      Motion to suppress hearing testimony

At the suppression hearing, a video recording of Officer Phillips' stop of Defendant's vehicle was also admitted as evidence. At the hearing, Officer Phillips testified that he activated his blue lights to initiate the stop of Defendant's vehicle at 14:57:50. At 15:00:30, Officer Phillips "call[ed] out the stop" to dispatch. He testified that he gave the dispatcher his badge number and location, and he believed he also gave the dispatcher Defendant's tag

number.  Officer Phillips testified that at 15:03:43, Defendant told Officer Phillips that Defendant had a gun under the hood of his car, and at 15:04:09, Officer Phillips called for backup officers "because [he] had a possible person with a weapon."  Backup officers arrived with their weapons drawn at 15:05:35.

Officer Phillips testified that Defendant "displayed several signs of nervousness," and Officer Phillips asked Defendant to exit the vehicle.  Officer Phillips testified that he asked Defendant whether he had any illegal items, and Defendant denied having each item Officer Phillips listed, but Officer Phillips testified, "whenever I sa[id] gun, his head rolls and he begins to walk back and forth, and he doesn't say anything.  Which was completely different from his answer on every other item I mentioned."  Officer Phillips looked under the hood of Defendant's car and did not find a gun.  At 15:07, Officer Phillips called for a canine unit.  At 15:08, Officer Phillips ran a check on Defendant's driver's license.  A canine unit arrived at 15:09.  Officer Phillips asked Defendant for consent to search the vehicle, and Defendant denied consent.  Officer Phillips testified on redirect examination that when he approached Defendant's vehicle at the beginning of the traffic stop, Defendant told him that his license was suspended.

Officer Mark Moghaddam, a certified canine handler with the Murfreesboro Police Department, testified that his dog, Tucker, is "an aggressive alert dog" and will "put his nose on where he believes the source of the odor – narcotic odor is coming from, and he will scratch."  Officer Moghaddam testified that he responded to a call from Officer Phillips on January 30, 2013.  When he arrived at the scene, Officer Phillips briefed him on the situation.  Officer Moghaddam then confirmed with Defendant that Defendant did not want to consent to a search of his vehicle, and he explained to Defendant what his dog would do.  Defendant told Officer Moghaddam that "a gun and marijuana [were] normally kept under the vehicle, and that he had kept marijuana in his vehicle as recent as a week ago."  Officer Moghaddam then conducted a "free air search" of the vehicle with the dog.  The dog alerted to the area of the passenger side of the vehicle.

Officer Moghaddam testified that Tucker had been certified for one year and that he had been Tucker's only handler.  He testified that every time Tucker had alerted to the presence of a narcotic odor, there was independent proof that a narcotic was present.  Officer Moghaddam did not participate in the search of Defendant's vehicle, but he testified that a Cigarillo, which is commonly used for smoking marijuana, and some marijuana "shake" were found in Defendant's vehicle.

In a written order denying Defendant's motion to suppress, the trial court made the following findings of fact and conclusions of law:

1. Murfreesboro Police Officer Chris Phillips initiated a traffic stop of Defendant's truck after observing the Defendant driving while not wearing a seatbelt and observing a covering over the truck's taillight in violation of Murfreesboro Code § 32-1005.

2. The Defendant pulled off the road into a parking lot and the Officer parked behind the Defendant's truck. The Officer testified the Defendant appeared nervous when asked to hand over his license and registration. The Defendant told the Officer his license was suspended. The Officer asks if there is anything illegal in the truck. The Defendant responds negatively and the Officer asks for consent to search. The Defendant declines to give consent and the Officer asks him to step out of the car. The Officer calls in the license plate. This occurs three minutes after the initial stop. (All time references are based on the time/date indicator on the video.) [sic]

3. The Officer continues to discuss his concerns about whether the Defendant is in possession of any contraband. The Defendant hesitates on the question of whether there is a gun in the truck and after repeated questioning tells the Officer it is under the hood. This occurs six minutes after the stop is initiated.

4. The Officer calls for backup and alerts concerning a possible weapon. The Officer and the Defendant move to the front of the truck, open the hood and are unable to locate a gun. Backup officers arrive. The defendant denies saying he had a gun. Officers continue to look under the hood and on the ground under the truck for a gun. The Defendant states the gun is at home. The Officer calls in the driver's license information. This occurs at eleven minutes after the stop.

5. The canine unit arrives and the Officer advises the canine handler about the stop. This occurs at twelve minutes after the stop. The canine officer talks to the Defendant and initiates a sweep around the truck. The canine indicates at the passenger door and the officers initiate a search of the truck. This occurs seventeen minutes after the stop.

6.　　Officers searching the vehicle locate an automatic handgun under the passenger seat of the truck and the Officer places the Defendant under arrest. This occurs nineteen minutes after the stop.

. . . .

10.　　The Officer had a lawful basis for making the stop. He encountered the Defendant driving on a street while not wearing his seat belt and with a covering over his taillights in violation of a Murfreesboro City Ordinance.

11.　　The Officer testified the Defendant appeared nervous when turning over his identification. The Defendant acknowledged he was driving without a license. The Defendant, after questioning, told the Officer he had a gun and it was located under the hood.

12.　　The Defendant argues the stop was longer than necessary for the purpose of the stop. He argues the entire stop should have only been long enough for the issuing of a citation. However, the Court finds that the Defendant's admission he was driving without a license and had a gun in the vehicle changed the purpose of the stop. Given the totality of the circumstances, the Officer cannot be faulted for continuing to attempt to locate and secure the weapon. The Court finds the length of the stop was not unreasonable.

13.　　The canine handler, Officer [Moghaddam], testified as to the training and certification both he and his dog, Tucker had received. He testified the dog had been utilized for searches for approximately one year. He stated the only records he kept concerning search results were whether the dog alerted or did not alert. He stated the dog had completed more sweeps where he did not alert than those where he alerted. He testified he had found confirmation of all cases where the dog alerted by either admissions or the discovery of contraband in all cases where the dog alerted. He stated he saw some marijuana "shake" in the floorboard of the vehicle after the search but that it was a very small amount and he did not collect it. He denied making any improper moves or actions to get the dog to alert on the truck during the sweep. He stated the dog receives praise whether he alerts during a search or does not alert. The Court finds no evidence the canine sweep of the truck was improper or any

-5-

reason to question the training, certification or track record of the dog or its handler. The Court finds the canine sweep of the truck was proper and the alert by the dog provided probable cause for the subsequent search.

14. The Court finds the Officer [Phillips] had probable cause to stop the Defendant's vehicle based on his failure to have his seat belt fastened and his violation of Murfreesboro city ordinance concerning taillight covers. His initial questioning disclosed the Defendant was driving without a license and there was a gun in the truck. The Court finds based on the disclosures of the Defendant the subsequent questions and attempt to locate the gun did not extend the stop unreasonably or transform the stop into an unlawful detention. The Officer diligently pursues the location of the weapon after the Defendant's disclosure. The Officer continues this investigation and the Defendant having initially stated the weapon was under the hood, gives conflicting statements that he never said there was a gun or states that the gun is at home. The Court finds no evidence was presented to show anything improper concerning the canine sweep or any reason to question the training or reliability of the canine or the canine officer. The total time of the stop was less than twenty minutes and the time from the stop until the arrival of the canine unit was twelve minutes. The Court finds the stop was lawful and not unreasonable in length given the totality of the circumstances and therefore the motion is denied.

*Analysis*

As part of his plea agreement, Defendant reserved the following certified question of law:

On October 1, 2013, the defendant filed a motion to suppress evidence obtained during a traffic stop raising issues which are incorporated by reference herein. On October 15, 2013 the Court denied the motion, finding: 1) the officer had probable cause to conduct a traffic stop; 2) that the stop was not unlawfully prolonged; and 3) that the K-9 sweep was valid under the Fourth Amendment. The issues certified are those presented in the motion to suppress previously filed by the defendant, specifically: 1) that there was no probable cause to conduct a traffic stop of the defendant's vehicle; 2) that the duration of the stop was unlawfully prolonged; and 3)

-6-

the K-9 sweep unlawfully prolonged the traffic stop, was administered incorrectly, and the K-9 was not shown to be reliable therefore not providing probable cause to search the defendant's vehicle.

On appeal from a trial court's ruling on a motion to suppress, the trial court's findings of fact should be upheld unless the evidence preponderates to the contrary. *State v. Hanning*, 296 S.W.3d 44, 48 (Tenn. 2009). The credibility of witnesses, the weight and value of the evidence, and the resolution of conflicts in the evidence are matters entrusted to the trial judge. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)).

At this juncture of the opinion we take the opportunity to recognize that the trial court's findings of fact are *the* model for the appropriate manner for a trial court judge to set forth his or her findings of fact. Far too often the purported "findings of fact" by a trial court are really only a recitation of most or all of the testimony elicited at a hearing. This type of presentation of proof is basically the format used by appellate courts for their opinions in addressing issues on appeal. However, appellate courts are not finders of fact from testimony presented in the presence of trial court judges. In findings of fact made by trial court judges, they need to state precisely what they believe happened in the event or incident[s] related to the hearing, exactly like what was done in this case, and not just recite the various conflicting testimony of the witnesses.

An automobile stop constitutes a "seizure" within the meaning of both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979); *State v. Pulley*, 863 S.W.2d 29, 30 (Tenn. 1993). The authorities must have probable cause or an "articulable and reasonable suspicion" to believe that a traffic violation has occurred when they initiate a traffic stop. *Whren v. U.S.*, 517 U.S. 806, 810, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996). Reasonable suspicion exists when "specific and articulable facts . . . taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). An investigatory traffic stop under *Terry* "is a far more minimal intrusion [than an arrest pursuant to probable cause], simply allowing the officer to briefly investigate further. If the officer does not learn facts rising to the level of probable cause, the individual must be allowed to go on his way." *Illinois v. Wardlow*, 528 U.S. 119, 126, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000). However, officers must have some reasonable basis to warrant

investigation; a mere "inchoate and unparticularized suspicion or 'hunch' " is not enough to generate reasonable suspicion. *Terry*, 392 U.S. at 27.

Tennessee's courts have also had ample opportunity to apply the reasonable suspicion standard. We have held that reasonable suspicion is "a particularized and objective basis for suspecting the subject of a stop of criminal activity." *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). The courts must look to the totality of the circumstances, *State v. Levitt*, 73 S.W.3d 159, 172 (Tenn. Crim. App. 2001) (citing *U.S. v. Cortez*, 449 U.S. 411, 417-18, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981); *Ornelas v. U.S.*, 517 U.S. 690, 696, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996)), to determine whether an officer reasonably believed that the operator of a vehicle had either committed a crime or was about to commit a crime. *Levitt*, 73 S.W.3d at 172; *State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

Defendant first contends that Officer Phillips did not have probable cause to stop Defendant's vehicle because the video evidence does not support Officer Phillips' testimony that he observed Defendant not wearing his seatbelt. Defendant asserts that the patrol car video shows that Officer Phillips "had approximately four seconds to observe the defendant's truck as it passed by his patrol car" and that the window tint of Defendant's vehicle "made it impossible to determine if the defendant had his seat belt on." Defendant does not dispute that there was a cover over one of his taillights, constituting a traffic violation. Defendant contends however that Officer Phillips had already initiated the stop by turning around to follow Defendant and activating his blue lights before he observed that Defendant's taillight was covered. Thus, Defendant contends, Defendant was seized prior to Officer Phillips having formed probable cause to stop Defendant's vehicle.

The State fails to specifically respond to Defendant's argument regarding the video recording. The State only asserts that the record supports the trial court's finding that "Officer Phillips had probable cause to stop the defendant's vehicle based upon the defendant's failure to have his seat belt fastened and his violation of a Murfreesboro city ordinance concerning taillight covers[.]"

The video shows Officer Phillips' and Defendant's vehicles both approaching an intersection at a right angle to each other. According to Officer Phillips' testimony at the preliminary hearing, and from what is observed on the DVD, as Officer Phillips was stopping at the intersection, Defendant approached the intersection from Officer Phillips' right side. Officer Phillips began to turn his vehicle to the right onto the street where Defendant's vehicle was located. At the point when Officer Phillips' vehicle had turned approximately 45 degrees, Defendant's vehicle continued in the same direction it was traveling proceeding straight through the intersection. Officer Phillips' vehicle had stopped at the approximate 45-degree position, and then he turned to the left in the intersection until he was following

-8-

behind Defendant. Defendant's vehicle first comes into view of the camera in Officer Phillips' patrol car at 14:57:16 when Defendant stopped at the intersection, and Officer Phillips had turned beside Defendant, and the driver's side of Defendant's vehicle was only a few feet from Officer Phillips' vehicle. Defendant's vehicle began driving through the intersection at 14:57:24. Officer Phillips testified that he activated his blue lights "as he was turning around" to follow Defendant's vehicle.

We note that the video taken by the camera mounted inside Officer Phillips' patrol car shows a stationary angle. In other words, what is seen on the video is only what is within the camera frame, which is pointed in the direction the patrol car is facing. The video does not show what the driver of the patrol car, Officer Phillips, could have seen looking out of the left or right side of the car or the rear of the car. We also note that the windows of Defendant's truck appear to be tinted in the video.

Regarding Defendant's challenge to the validity of the initial stop, we conclude that the evidence does not preponderate against the trial court's finding that Officer Phillips had probable cause to initiate a stop of Defendant's vehicle. At the preliminary hearing, Officer Phillips testified that he observed Defendant in his vehicle at the intersection, and he "observed [Defendant] having no seat belt on whatsoever." Officer Phillips observed Defendant "[l]ong enough to look and see if he was gonna put [his seat belt] on." He testified, "I – I seen it [sic], seen him [sic], he had time to put it on and didn't." Officer Phillips testified that he observed Defendant for "[r]oughly four or five seconds." He testified that although the windows of Defendant's vehicle were tinted, he could clearly see that Defendant was not wearing a seatbelt. In its findings of fact, the trial court accredited this testimony by Officer Phillips. The record supports the trial court's finding that Officer Phillips had probable cause to initiate a traffic stop of Defendant's vehicle. *See State v. Harris*, 280 S.W.3d 832, 839-40 (Tenn. Crim. App. 2008) (officer's testimony that he saw the defendant driving without a seatbelt in violation of T.C.A. § 55-9-603(a)(1) gave probable cause for a traffic stop).

Defendant also contends that the duration of the detention exceeded the time that would have been reasonable for the issuance of a traffic citation. The State asserts that Defendant's detention did not exceed the length necessary to effectuate the purpose of the stop. The evidence shows that upon effectuating the stop at 14:57:50, Defendant began to exit his vehicle, and Officer Phillips directed Defendant to stay inside his vehicle. Officer Phillips approached Defendant in his vehicle and requested his driver's license and registration. Defendant provided Officer Phillips with his driver's license and registration, and Officer Phillips observed that Defendant's license was for identification only. Officer Phillips testified that Defendant told him as soon as the stop began that his driver's license was suspended. Officer Phillips testified that he questioned Defendant to "investigate[ ] his

level of nervousness whether it's – is it because his license is suspended or is it something more than that." The video recording shows that Defendant exited his vehicle at 15:00:25, and Officer Phillips and Defendant walked to the front of Officer Phillips' patrol car. Officer Phillips put Defendant's license and registration on the hood of his patrol car and called in the location of the stop to dispatch. Officer Phillips then continued to question Defendant about whether he had anything illegal in his vehicle for approximately three to four minutes. Officer Phillips testified that Defendant told him that there was a gun in his vehicle, and Officer Phillips called for backup officers, stating as the reason for backup that he "had a possible person with a weapon." Officer Phillips is heard on the recording several times asking Defendant, "where's the gun?" At 15:04:14, Officer Phillips and Defendant walked over to Defendant's vehicle, and Officer Phillips reached inside to release the hood latch. At 15:05:39, other officers arrived on the scene with their weapons drawn. At 15:09:41, Officer Moghaddam arrived at the scene, and he spoke with Officer Phillips. Officer Moghaddam then spoke with Defendant. At 15:12:37, he began to conduct the canine sweep, which took less than two minutes. Officers then searched Defendant's vehicle and found a the pistol. Defendant was handcuffed and placed under arrest at 15:15:55, 18 minutes after Officer Phillips stopped Defendant's vehicle.

Our supreme court has held that "[a]fter a traffic violation, a driver can generally expect 'to spend a short period of time answering questions and waiting while the officer checks his license and registration.'" *State v. Berrios*, 235 S.W.3d 99, 107 (Tenn. 2007) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 437, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984)). In this case, Officer Phillips' questioning revealed additional statutory violations. Defendant's license indicated that it was for identification only, and Defendant told Officer Phillips that it was suspended. Defendant also appeared to Officer Phillips to be nervous. We agree with the trial court that the purpose of the stop changed when Officer Phillips learned that Defendant was driving without a valid driver's license and possibly had a handgun in the vehicle. The trial court found that Defendant told Officer Phillips that there was a gun under the hood of his vehicle, and Officer Phillips called for backup officers concerning a possible weapon in the vehicle.

The trial court found that it was reasonable for Officer Phillips to continue investigating whether Defendant had a gun in his vehicle. Our supreme court has also recognized that a lawful traffic stop authorizes officers, as a matter of course, to require drivers to exit their vehicles. *State v. Donaldson*, 380 S.W.3d 86, 93 (Tenn. 2012). However, the duration of an investigative detention should last no longer than necessary and should generally end when there is no further reason to control the scene or the driver of the vehicle. *Id*. (citing *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009) and *Brendlin v. California*, 551 U.S. 249, 258, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007)). "'Similarly, the investigative methods employed should be the least intrusive means

reasonably available to verify or dispel the officer's suspicion in a short period of time.'" *Id.* (quoting *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983). In *State v. Cox*, 171 S.W.3d 174 (Tenn. 2005), our supreme court held:

> The duration of [a traffic] stop . . . must be "temporary and last no longer than necessary to effectuate the purpose of the stop." "The proper inquiry is whether during the detention the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." A traffic stop may be deemed "unreasonable," if the "'time, manner or scope of the investigation exceeds the proper parameters.'"

*Donaldson*, 380 S.W.3d at 93-94 (quoting *Cox*, 171 S.W.3d at 179-180).

It was less than fifteen minutes from the time Officer Phillips stopped Defendant's vehicle until the time the canine alerted. Under the circumstances of this case, we conclude that Defendant's detention did not exceed the length necessary to effectuate the purpose of the stop when facts of additional criminal activity were revealed so early in the detention. The traffic stop did not constitute an unlawful detention.

Finally, Defendant contends that the canine sweep unlawfully prolonged the traffic stop and was not shown to be reliable, therefore, Defendant argues, the canine alert did not provide probable cause to search his vehicle. The record supports the trial court's finding that Officer Moghaddan arrived at the scene twelve minutes after Officer Phillips initiated the stop of Defendant's vehicle. As we noted above, the canine sweep occurred within fifteen minutes of Officer Phillips' initial stop of Defendant's vehicle. In *State v. Harris*, 280 S.W.3d 832, 841 (Tenn. Crim. App. 2008), this court explained,

> Accordingly, in dog sniffing cases, the constitutional inquiry focuses not upon the means used to detect the presence of narcotics but rather the time it takes to conduct the dog's sweep of the vehicle. An otherwise lawful canine sweep that is ancillary to a legitimate traffic stop may constitute an unlawful search if the suspect is detained beyond the time necessary to complete the traffic stop.
>
> The officer needs no suspicion or cause to "run the dog around" the stopped vehicle if he does it contemporaneously with the legitimate activities associated with the traffic violation.

(Citations omitted).

In that case, we observed that if the officer conducts a canine sweep after any activities related to the issuance of a citation "are – or should have been – completed, . . . he is engaging the motorist in an unconstitutional detention, unless an independent basis for suspicion has legitimately evolved." *Id*. at 842 (citations omitted). Here, there is nothing in the record to show that all activities related to the issuance of a citation or arrest for driving without a seatbelt, driving with an illegal cover on Defendant's taillight, driving without a valid driver's license and/or driving on a suspended license, and/or a weapon charge should have been completed.

The trial court also found that there was no reason to question "the training, certification or track record of the dog or its handler." Officer Moghaddam testified that he completed a three-week handler course, and his dog, Tucker, completed a 10-week training course. Officer Moghaddam and Tucker were tested and certified. Defendant has not shown that the evidence preponderates against the trial court's findings regarding the training of the officer or canine. A positive reaction to a vehicle by a trained drug detection dog provides probable cause to search the inside of a vehicle. *State v. England*, 19 S.W.3d 762, 769 (Tenn. 2000). When Officer Moghaddam ran his dog around Defendant's vehicle for a free air search, the dog alerted by scratching the area of the passenger side of the vehicle. Officers then searched the inside of Defendant's vehicle and found marijuana "shake" and a handgun.

Having reviewed the briefs of the parties and the entire record before us, we conclude that the evidence supports the trial court's conclusions that the officer had probable cause to conduct a traffic stop of Defendant's vehicle, and that given the totality of the circumstances, the stop was lawful and not unreasonable in length. Accordingly, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE