Rockingham
No. 2001-495

THE STATE OF NEW HAMPSHIRE

v.

DANIEL BOYLE

Argued: July 11, 2002
Opinion Issued: September 16, 2002

*Philip T. McLaughlin*, attorney general (*Susan P. McGinnis*, attorney, on the brief and orally), for the State.

*Law Office of Joshua L. Gordon*, of Concord (*Joshua L. Gordon* on the brief and orally), for the defendant.

NADEAU, J. The defendant, Daniel Boyle, was convicted of driving while certified as a habitual offender, *see* RSA 262:23 (1993) (amended 2000, 2001), and disobeying an officer, *see* RSA 265:4 (1993). On appeal, he argues that the Superior Court (*Galway*, J.) erroneously denied his motion to suppress evidence obtained during an allegedly unconstitutional seizure. We reverse and remand.

The following facts were adduced at the suppression hearing. At approximately one o'clock on the morning of June 2, 2000, a Rye police officer saw a vehicle stopped in the travel lane on a residential street. As the officer drove closer, the vehicle pulled off to the side of the road leaving part of the vehicle in the travel lane. The officer pulled up alongside the vehicle, rolled down his passenger side window, and asked the driver, the defendant, if he had broken down. The defendant replied that he had just dropped off a drunk female and was waiting to see if she was okay. At the suppression hearing, the officer testified that he found this reply unusual and was concerned that there might be medical or safety issues. The officer parked behind the defendant's vehicle and activated his front takedown lights, front spot light, and the strobe light on top of the cruiser. The officer then approached the vehicle and asked the defendant about the female. During the conversation, the officer smelled a strong odor of alcohol on the defendant's breath. He then asked to see the

defendant's license and registration and later arrested him after discovering that he lacked a valid license.

The defendant moved to suppress all evidence obtained because of this stop, arguing that he was seized unconstitutionally when the officer parked behind his vehicle and activated his lights. The trial court agreed that the defendant was seized, but ruled that the seizure was constitutional. The court held that the seizure was reasonable given the minimal intrusion into the defendant's rights and the officer's community caretaking function.

"Our review of the superior court's order on a motion to suppress is *de novo*, except as to any controlling facts determined at the superior court level in the first instance." *State v. Sawyer*, 147 N.H. 191, 193 (2001) (quotation omitted). Because neither party disputes the finding that the defendant was seized when the officer parked behind the defendant's vehicle and activated his lights, our sole task on appeal is to determine whether the seizure was constitutional. *See State v. Wallace*, 146 N.H. 146, 148 (2001).

The defendant argues that the seizure violated his rights under Part I, Article 19 of the State Constitution and the Fourth Amendment to the Federal Constitution. *See* N.H. CONST. pt. I, art. 19; U.S. CONST. amend. IV. We consider his arguments first under the State Constitution, using federal cases to aid in our analysis only. *See Sawyer*, 147 N.H. at 193. Because the State Constitution is at least as protective as the Federal Constitution in this area, we need not conduct a separate federal analysis. *See id.*

Under Part I, Article 19 of our State Constitution, every citizen has "a right to be secure from all unreasonable searches and seizures of his person." Warrantless seizures are *"per se* unreasonable unless they fall within the narrow confines of a judicially crafted exception." *State v. Brunelle*, 145 N.H. 656, 659 (2000) (quotation omitted). The State bears the burden of establishing that a seizure falls within one of these exceptions. *Id.*

The State argues that the seizure was a "well-being" check and is authorized absent either reasonable suspicion or probable cause because the officer was acting as a "community caretaker."

We first recognized the community caretaking exception to the warrant requirement in *State v. Psomiades*, 139 N.H. 480, 482 (1995), where we applied it to an officer's removal of a purse from a suspect's car. We held that the community caretaking exception applies to the seizure of property "when [the seizure] constitutes no more than a routine and good faith attempt, in the exercise of reasonable caution, to safeguard the defendant's own property." *Id.* (quotation omitted). We ruled that the exception applied to the seizure in *Psomiades* because the officer "reasonably could

[have] conclude[d] that the vehicle would present a prime target for vandals and that any property left in plain view could be vulnerable." *Id.*

In *Brunelle*, we assumed, without deciding, that an officer's request for the defendant's license and registration constituted a seizure and ruled that this limited request for information was a reasonable exercise of the officer's community caretaking duties. *Brunelle*, 145 N.H. at 658-59. We noted that the defendant was pushing his disabled car into a State-owned parking lot when the officer, as required by statute, asked for his license and registration. *Id.* at 659. The officer was not conducting a criminal investigation at the time, and her request for the defendant's identifying information created a record of her contact with the driver in the event that any questions arose about the vehicle or its owner. *Id.*

In this case, we are asked, for the first time, to apply the community caretaking doctrine to the seizure of a person in an automobile for a routine check on health and safety. To be valid under the community caretaking exception, the seizure must be "totally separate from the detection, investigation or acquisition of evidence relating to a criminal matter." *Id.*

As with other warrantless seizures justified on grounds that do not amount to probable cause, to justify a seizure under the community caretaking exception, the officer must "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *State v. Pellicci*, 133 N.H. 523, 529 (1990) (quotation and brackets omitted). We judge these facts by an objective standard: would the facts available to the officer at the moment of the seizure warrant a person of reasonable caution to believe that the action taken was appropriate. *State v. Landry*, 116 N.H. 288, 291 (1976); *Terry v. Ohio*, 392 U.S. 1, 20-21 (1968).

In determining whether the grounds for a particular seizure meet constitutional requirements, we balance the governmental interest that allegedly justified it against the extent of the intrusion on protected interests. *See Pellicci*, 133 N.H. at 529. "Whether the seizure of a person by a police officer acting in his or her noninvestigatory capacity is reasonable ... requires a reviewing court to balance the governmental interest in the police officer's exercise of his or her community caretaking function and the individual's interest in being free from arbitrary government interference." *United States v. King*, 990 F.2d 1552, 1560 (10th Cir. 1993) (quotation omitted).

█ In this case, the officer testified that he seized the defendant because he found the defendant's response to the officer's initial

questioning "unusual." The defendant's response led the officer to believe that there might be a safety or medical issue. Although the officer testified that the focus of his concern was the drunk female, not the defendant, these facts do not justify the seizure of the defendant under the community caretaking exception. Judged objectively, these facts would not cause a reasonable person to believe that it was appropriate to seize the defendant to investigate further. The officer may have had reason to believe that the drunk female needed aid, but he had no reason to believe that the defendant, the sole occupant of the vehicle, needed it. Absent any indication that the defendant needed aid, the officer was not justified in seizing him under the community caretaking exception. *See Ozhuwan v. State*, 786 P.2d 918, 922 (Alaska Ct. App. 1990).

The State argues, for the first time on appeal, that the seizure was constitutional because it was supported by reasonable suspicion that the defendant had committed a motor vehicle offense. *See State v. Hight*, 146 N.H. 746, 748 (2001). Before the trial court, the State asserted, to the contrary, that it was *not* arguing "that this man was pulled over for reasonable suspicion of committing or about to be committing a crime." Because the State did not argue below that the seizure was supported by reasonable suspicion that the defendant had committed a motor vehicle offense, we decline to address this argument on appeal. *See State v. Santana*, 133 N.H. 798, 808-09 (1991).

*Reversed and remanded.*

BROCK, C.J., and DALIANIS and DUGGAN, JJ., concurred.