Rockingham
No. 2002-603

## THE STATE OF NEW HAMPSHIRE

### v.

## MICHAEL D'AMOUR

Argued: July 10, 2003
Opinion Issued: October 10, 2003

*Peter W. Heed*, attorney general (*Stephen D. Fuller*, senior assistant attorney general, on the brief and orally), for the State.

*Landya McCafferty*, assistant appellate defender, of Dover, on the brief and orally, for the defendant.

BRODERICK, J. The defendant, Michael D'Amour, appeals his conviction on one count of possession of a controlled drug, *see* RSA 318-B:26 (Supp. 2002), after a jury trial in the Superior Court (*Abramson*, J.). On appeal, he contends that the Superior Court (*Coffey*, J.) erred in denying his motion to suppress evidence obtained during the warrantless search and seizure of his backpack. We reverse and remand.

After a hearing on the motion to suppress, the superior court found the following facts. Early on the morning of July 10, 2001, Officer MacDonald, of the Portsmouth Police Department, was dispatched to the railroad tracks behind Bill's Used Appliances to assist officers responding to a noise complaint made by the store owners. At the scene, Officer MacDonald assisted two other officers in arresting four men, including the defendant. Following the defendant's arrest for criminal trespass and resisting arrest, Officer MacDonald took him to Portsmouth Hospital for treatment of several abrasions. At the hospital, Officer MacDonald overheard the defendant tell a nurse that he had asthma, for which he used an inhaler. After reading the defendant his *Miranda* rights, *see Miranda v. Arizona*, 384 U.S. 436 (1966), Officer MacDonald took him to the Portsmouth Police Department for booking. Once there, another police officer took charge of the defendant when Officer MacDonald was directed by the shift commander to retrieve the defendant's boots from the

hospital, and then return to the scene of the arrest to check for property damage and ensure that nothing had been left behind.

Approximately one hour after his initial dispatch, Officer MacDonald arrived back at the appliance store. A small trailer, owned by the store's proprietors, stood behind the store, some thirty to fifty yards from the spot where the defendant was arrested. Officer MacDonald noted that the trailer appeared to be empty, but observed that its door was open and that a backpack sat in its threshold. Observing no one and nothing else in the area, the officer looked inside the backpack for identification. Although he found none, he did detect three pills wrapped in tissue paper and two asthma inhalers. Having remembered the defendant's earlier disclosure that he used an inhaler for an asthma condition, the officer took the backpack to the police station to determine whether it belonged to the defendant.

Once there, Officer MacDonald asked the defendant if the backpack was his and if he wanted to inspect it to make sure that nothing was missing. After acknowledging ownership, the defendant looked through the backpack and confirmed that its contents were intact. Officer MacDonald asked him if he was under a physician's care or taking any prescription medication. The defendant said he was not. Because the pills in the backpack had not been prescribed for the defendant, Officer MacDonald arrested him on the additional charge of possession of a controlled drug without a prescription. He then fully inventoried the backpack's contents.

Prior to trial, the defendant moved unsuccessfully to suppress any evidence obtained as a result of the search and seizure of his backpack. After a two-day trial, the defendant was convicted. This appeal followed.

The defendant argues that the trial court, in denying his motion to suppress, erred in ruling that: (1) Officer MacDonald's initial warrantless search and seizure of his backpack was justified under the "community caretaking" exception to the warrant requirement; and (2) the officer's warrantless search of the backpack at the police station was justified under the "inventory" exception to the warrant requirement. Consequently, he contends that the introduction at trial of evidence seized during the warrantless searches of his backpack violated his rights under Part I, Article 19 of the New Hampshire Constitution. Because we conclude that the trial court's finding that the initial search and seizure of the backpack was done solely as community caretaking was clearly erroneous, we remand this case to the trial court for further proceedings consistent with this opinion.

Our review of the superior court's order on a motion to suppress is *de novo*, except as to any historical facts found. *See State v. Finn*, 146 N.H.

59, 60 (2001). Such findings will not be disturbed on appeal unless they are clearly erroneous. *See State v. McBreairty*, 142 N.H. 12, 14 (1997).

Part I, Article 19 of our State Constitution provides that every citizen has "a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions." Warrantless seizures are considered *per se* unreasonable unless they fall within the narrow confines of a judicially crafted exception. *State v. Psomiades*, 139 N.H. 480, 481 (1995). The State bears the burden of proving by a preponderance of the evidence that a seizure or search falls within one of these exceptions. *See State v. Westover*, 140 N.H. 375, 379 (1995); *Psomiades*, 139 N.H. at 481.

In *Psomiades*, we explicitly recognized a limited "community caretaking" exception to the warrant requirement. *Psomiades*, 139 N.H. at 481-82. We held that the exception applies to the seizure of property when the seizure constitutes no more than a routine and good faith attempt, in the exercise of reasonable caution, to safeguard a defendant's own property. *Id.* at 482.

Our recognition in *Psomiades* of the community caretaking exception under our State Constitution noted its initial adoption by the United States Supreme Court in *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). In that case, the Court observed:

> Local police officers . . . frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

*Cady v. Dombrowski*, 413 U.S. at 441; *see Psomiades*, 139 N.H. at 481. We have also cited with approval *People v. Ray*, 981 P.2d 928, 931 (Cal. 1999), *cert. denied*, 528 U.S. 1187 (2000), for a further delineation of the exception.

> In the average day, police officers perform a broad range of duties, from typical law enforcement activities — investigating crimes, pursuing suspected felons, issuing traffic citations — to "community caretaking functions" — helping stranded motorists, returning lost children to anxious parents, assisting and protecting citizens in need . . . .

*People v. Ray*, 981 P.2d at 931; *see State v. Denoncourt*, 149 N.H. 308, 310 (2003); *see also State v. Seavey*, 147 N.H. 304, 311 (2001) (Duggan, J., dissenting).

▆ While the "divorce" between the community caretaking function and the role of the police in the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute must be total, we conclude that the absolute separation need only relate to a sound and independent basis for each role, and not to any requirement for exclusivity in terms of time or space. We reject the contention that dicta in our case law requires that the separation of the community caretaking function from the investigation of a criminal matter be of a temporal or spatial nature. *See Denoncourt*, 149 N.H. at 310 ("Evidence found in the course of caretaking activities is usually admissible at trial."). *But see State v. Boyle*, 148 N.H. 306, 308 (2002).

To hold that the police can never legitimately engage in community caretaking activities merely because they are also involved in the detection, investigation, or acquisition of evidence concerning the violation of a criminal statute could lead to absurd results. For example, while investigating a crime, the police could happen upon an unopened wallet, seemingly flush with cash. Under an overly narrow interpretation of the "divorce" between community caretaking and investigation, the police would not be allowed to seize the wallet for safekeeping but would be required to leave it unprotected, even if they had no inkling that the wallet was in any way connected to their criminal investigation.

The State argues that *United States v. Rodriguez-Morales*, 929 F.2d 780 (1st Cir. 1991), *cert. denied*, 502 U.S. 1030 (1992), supports the contention that the police may conduct a search of lost property even when they suspect they will find evidence of a crime. In *Rodriguez-Morales*, the First Circuit Court of Appeals approved, under the Fourth Amendment to the Federal Constitution, the removal of the defendant's automobile from the highway and its impoundment at the state police barracks as a reasonable exercise of the police's community caretaking function, once the police discovered that neither the defendant nor his passenger had a valid driver's license. *Id.* at 785-86. The court noted that the fact the impoundment "stemmed in part from an investigatory motive [did] not change either the analysis or the result. As long as impoundment pursuant to the community caretaking function is not a mere subterfuge for investigation, the coexistence of investigatory and caretaking motives will not invalidate the seizure." *Id.* at 787.

▆ We agree. In addition:

> [T]o justify a seizure under the community caretaking exception, the [police] officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the [community caretaking activity]. We judge these facts by an objective standard: would the facts available to the officer at the moment of the seizure warrant a person of reasonable caution to believe that the action taken was appropriate.

*Boyle*, 148 N.H. at 308 (quotation and citation omitted). Consequently, we hold that a police officer engaged in a criminal investigation may under limited circumstances also perform independent community caretaking at the same time or place, provided that it is not "a mere subterfuge for investigation," *Rodriguez-Morales*, 929 F.2d at 787. Whether a subterfuge exists shall be determined by the trial court under an objective standard, *see Boyle*, 148 N.H. at 308. The question of whether dual purposes on the part of the police concurrently exist must receive careful scrutiny by the trial court in the first instance.

In its order denying the defendant's motion to suppress, the trial court stated:

> Officer MacDonald's conduct in this case clearly falls within the community caretaking exception to our warrant requirement. . . .
>
> Officer MacDonald was sent back to secure the crime scene after an arrest as part of his community caretaking functions. He was not involved in a further criminal investigation to detect and acquire evidence, because the suspects had already been arrested.

(Citation omitted.)

■ Our review of the record, however, shows that Officer MacDonald's testimony at the suppression hearing contradicts the trial court's finding that he was not involved in a further criminal investigation to detect and acquire evidence. Specifically, he testified that "[he] was directed by [the shift commander] to go back to the scene to investigate the initial complaint and look for any damage or left-over property . . . ." On cross-examination, Officer MacDonald confirmed that "when [the shift commander] told [him] to go back to the scene, [he was] told to go check the area for any evidence or damage." Further, he confirmed that, "in part," he was returning to the scene "in order to figure out if . . . there was anything additional that [he might] be able to use to charge these guys" and that "[the police] never really finished securing the scene, finish

investigating the initial complaint. [The shift commander] wanted me to go back, make sure there was no damage to any personal property left behind or any other evidence left behind."

■ In light of the testimony of Officer MacDonald, the State's sole witness at the suppression hearing, the trial court's finding that he was not involved in a further criminal investigation to detect and acquire evidence is clearly erroneous. Officer MacDonald was directed to return to the scene, and he did so, with apparent mixed "investigatory and caretaking motives." *Rodriguez-Morales*, 929 F.2d at 787. Consequently, the trial court's finding that Officer MacDonald's conduct "clearly falls within the community caretaking exception to [the] warrant requirement" was based upon an erroneous foundation. While the record before us raises a question of whether community caretaking exists under the facts of this case or, if it exists, whether its outlines can be distinguished from the ongoing criminal investigation at the scene, we are compelled to remand this matter to the trial court for a determination as to whether mixed motives existed here and, if so, for an application of the mixed motive analysis.

■ On remand, the trial court shall make factual findings as to whether the search and seizure of the backpack, ostensibly pursuant to the community caretaking function, was a mere subterfuge for further criminal investigation. Because we today adopt the standard enunciated by the First Circuit in *Rodriguez-Morales*, the trial court may hold a new hearing if necessary before making the required factual findings.

If the trial court finds that Officer MacDonald's search and seizure of the backpack was in fact a mere subterfuge for further criminal investigation, then the trial court's denial of the motion to suppress was error and the evidence obtained during the warrantless search and seizure must be suppressed. If so, the court should order a new trial unless it finds that the error of not suppressing the evidence in the first trial was harmless beyond a reasonable doubt. *See State v. McLellan*, 146 N.H. 108, 113 (2001).

Because the trial court may find that Officer MacDonald's search and seizure of the backpack was not a mere subterfuge for further criminal investigation, and thus lawful under the community caretaking exception, we will address the inventory search at the police station in the interest of judicial economy. *See State v. Frost*, 141 N.H. 493, 498 (1996).

The defendant contends that the trial court erred in concluding that the inventory search, undertaken pursuant to the police department's clearly established, written inventory policy, was lawful, because the inventory search was actually conducted before his arrest for possession of a

controlled drug without a prescription, contrary to the trial court's factual finding.

The Portsmouth Police Department (department) standard operating procedure regarding inventory searches reads, in pertinent part:

> Inventory searches of the arrestee, during booking, and searches of the arrestee[']s property may be undertaken without a warrant.
>
> Justification for such routine searches is the legitimate interest in protecting the confinement area and the arrestee, and in facilitating the administrative handling of personal belongings during incarceration.

(Citation omitted.) Referencing this standard operating procedure, the trial court concluded that "[a]t that point, Officer MacDonald knew that the defendant possessed a controlled drug without a prescription, charged him with that additional offense, and inventoried the bag pursuant to the clearly established, written . . . inventory policy."

█ Our review of the record, however, confirms that Officer MacDonald's inventory search of the backpack preceded both the defendant's arrest for possession of a controlled drug without a prescription and his verification that the backpack belonged to the defendant. As such, the trial court's factual finding that the inventory search followed the defendant's arrest on the second charge is clearly erroneous.

The State concedes that the inventory search was conducted before the defendant's ownership of the backpack had been established. The State contends, however, that the inventory search was proper pursuant to the department's standard policy for lost or mislaid property, an unwritten policy testified to by Officer MacDonald. We express no opinion as to whether the inventory search conducted before the defendant's arrest on the second charge was proper under either the department's written standard operating procedure or the alleged unwritten policy testified to by Officer MacDonald. Instead, the trial court can address these issues on remand, if necessary.

*Reversed and remanded.*

DALIANIS and DUGGAN, JJ., concurred; NADEAU, J., with whom BROCK, C.J., joined, concurred in part and dissented in part.

NADEAU, J., concurring in part and dissenting in part. I agree with the majority that "a police officer engaged in a criminal investigation may

under limited circumstances also perform independent community caretaking at the same time or place," provided that it is not a mere pretext for investigation. *See United States v. Rodriguez-Morales*, 929 F.2d 780, 787 (1st Cir. 1991), *cert. denied*, 502 U.S. 1030 (1992). I also agree with the majority that the trial court's finding that Officer MacDonald was not involved in further criminal investigation is clearly erroneous.

I respectfully dissent, however, from the decision to remand this case to the trial court. I would instead hold, as a matter of law, that the community caretaking in this case was pretextual. *See State v. Berry*, 148 N.H. 88, 92 (2002).

The undisputed evidence in this record is that Officer MacDonald initially went to the open trailer to investigate a noise complaint. He returned to the trailer approximately an hour after assisting in arresting the defendant and others specifically to finish that investigation. He was directed, in part, to check the area for "evidence" and to "figure out if . . . there was anything additional that [he] may be able to use to charge these guys." As he explained: "Everything happened very fast. The fight was pretty intense. Everybody left for the hospital. So we never really finished securing the scene, finish investigating the initial complaint."

Although his sergeant had directed him to look for "damage to any personal property left behind or any other evidence left behind," Officer MacDonald admitted that there had not been any complaints of damaged personal property or any indication that the defendant had left any personal property behind. The explanation that he returned to the scene to look for damage to personal property or evidence left behind is doubtful at best.

Under these circumstances, I would hold, as a matter of law, that Officer MacDonald's search and seizure of the backpack was not "totally separate from the detection, investigation, or acquisition of evidence relating to a criminal matter." *State v. Brunelle*, 145 N.H. 656, 659 (2000). Because the evidence indicates that the search was "a pretext concealing an investigatory police motive," *South Dakota v. Opperman*, 428 U.S. 364, 376 (1976), the search was not a valid exercise of the community caretaking function.

BROCK, C.J., joins in the opinion of NADEAU, J.