Grafton
No. 2008-813

## THE STATE OF NEW HAMPSHIRE

v.

## JOSHUA A. BOUTIN

Argued: October 21, 2010
Opinion Issued: November 24, 2010

*Michael A. Delaney*, attorney general (*Karin M. Eckel*, assistant attorney general, on the brief and orally), for the State.

*Stephanie Hausman*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. The defendant, Joshua A. Boutin, appeals a decision of the Superior Court (*Bornstein*, J.) denying his motion to suppress evidence obtained as a result of the stop of his automobile. We reverse and remand.

The record supports the following facts. On January 27, 2007, at approximately 8:35 p.m., while driving on Bradley Hill Road in Bath, State Trooper Matthew Koehler observed a Jeep Cherokee with its headlights on parked in what he described as a "pull off adjacent to the westbound lane of travel, but facing east. The car was at least eight feet from the edge of the roadway. It was a dark, cold night and there was snow on the ground, but the road markings were visible. At the suppression hearing, Koehler testified that it was unusual to see a car parked in such a manner. He also testified that he had covered a fatal motor vehicle accident several weeks earlier, in which a vehicle parked similarly to the defendant's was a contributing factor. Additionally, he believed the manner in which the Jeep was parked violated RSA 265:71 (Supp. 2009), which governs parking on a roadway.

Based upon these observations, Koehler stopped "to see if anything was wrong, just checking things out." He pulled behind the Jeep and activated his cruiser's blue lights and spotlight in order to alert any potential occupants of the vehicle and other motorists of his presence. He did not know whether the vehicle was occupied, whether an accident had occurred, or whether any potential occupants needed assistance. When he approached the Jeep, he observed two men in the front seat and asked the passenger to lower his window. While speaking with the occupants, Koehler smelled the odor of marijuana in the interior of the vehicle. Upon questioning, the driver, Boutin, denied that there was marijuana in the vehicle, but marijuana was found during a subsequent search. Boutin was charged with possession of drugs in a motor vehicle, contrary to RSA 265-A:43 (Supp. 2009).

Prior to his trial, the defendant moved to suppress the marijuana, alleging that the officer did not have reasonable suspicion to seize him and that the community caretaking exception to the warrant requirement did not apply. The superior court ruled that while the police lacked reasonable suspicion of criminal activity to seize Boutin, the seizure was valid under the community caretaking exception because the totality of the circumstances reasonably indicated that the occupants of Boutin's vehicle needed aid. Boutin was then convicted following a jury trial.

On appeal, Boutin argues only that the trial court erred in denying his motion to suppress because his seizure was not justified by the community caretaking exception to the warrant requirement. He contends that the State did not establish specific and articulable facts indicating that he needed police assistance. He further asserts that the police could have

stopped and asked him if he needed assistance in a manner that did not constitute a seizure, but that his interest in being free from government intrusion prevented the police from seizing him in this case.

The State counters that the officer's seizure of Boutin was based upon specific and articulable facts supporting his conclusion that the vehicle's occupants may have needed assistance. The State also argues that the officer's primary purpose in making the stop was to determine whether the occupants needed assistance, and not to seize evidence or make an arrest. The State does not argue that Boutin was illegally parked, and, therefore, we need not address whether the officer had reasonable suspicion to seize the defendant for an alleged violation of RSA 265:71.

When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's findings unless they lack support in the record or are clearly erroneous. *State v. Craveiro*, 155 N.H. 423, 426 (2007). However, we review the trial court's legal conclusions *de novo. Id.* The trial court found, and neither party disputes, that the defendant was seized when the officer parked behind the defendant's vehicle and activated both his rear and forward-facing blue lights. *See State v. Steeves*, 158 N.H. 672, 676-77 (2009). Accordingly, on appeal, we need to determine only whether the seizure was constitutional. *See State v. Boyle*, 148 N.H. 306, 307 (2002).

█ The defendant argues that the seizure violated his rights under Part I, Article 19 of the New Hampshire Constitution and the Fourth Amendment to the Federal Constitution. We consider his arguments first under the State Constitution, using federal cases only to aid in our analysis. *See State v. Sawyer*, 147 N.H. 191, 193 (2001). Part I, Article 19 of the New Hampshire Constitution provides that every citizen has "a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions." Warrantless searches and seizures are *per se* unreasonable, unless they fall within the narrow confines of a judicially crafted exception. *Craveiro*, 155 N.H. at 426. The burden of establishing that a seizure falls within one of these exceptions is on the State. *Id.*

█ We first recognized the community caretaking exception to the warrant requirement in *State v. Psomiades*, 139 N.H. 480, 482 (1995), where we held that it applies to the seizure of property "when [the seizure] constitutes no more than a routine and good faith attempt, in the exercise of reasonable caution, to safeguard the defendant's own property." *Id.* (quotation omitted). While *Psomiades* dealt with the seizure of property, we later considered the application of the community caretaking exception to the seizure of a motorist in *Boyle.* We explained that in order to justify a seizure under this exception, the police officer

must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. We judge these facts by an objective standard: would the facts available to the officer at the moment of the seizure warrant a person of reasonable caution to believe that the action taken was appropriate.

*Boyle*, 148 N.H. at 308 (quotation and citation omitted). In determining whether a seizure by a police officer acting in a noninvestigatory capacity is reasonable, we must "balance the governmental interest in the police officer's exercise of his or her community caretaking function and the individual's interest in being free from arbitrary government interference." *Id.* (quotation omitted).

In *Boyle*, an officer saw a vehicle stopped in the travel lane on a residential street and pulled up next to the driver to ask whether he had broken down. *Id.* at 306. The driver told the officer he had just dropped off a "drunk female." *Id.* At that point, the officer became concerned about potential medical or safety issues and pulled behind the vehicle and activated his front takedown lights, front spot light, and the strobe light on top of the cruiser. *Id.* We determined that these facts, judged objectively, "would not cause a reasonable person to believe that it was appropriate to seize the defendant to investigate further." *Id.* at 309. While the officer may have believed the drunk female required aid, he had no reason to believe that the driver, the only person actually in the vehicle at the time, required assistance. *Id.* Accordingly, we held that the community caretaking exception did not justify the driver's seizure. *Id.*

■ In this case, the officer testified that he approached Boutin's vehicle, "[j]ust to see if everything — if anything was wrong, make sure everything was okay." He testified that he could not tell if there was an accident, if the vehicle was abandoned or if any occupants may have needed assistance or had health concerns. He also observed that Boutin's vehicle was pulled off to the side of the road, but facing the wrong way. As in *Boyle*, while the officer may have had generalized concerns about the vehicle and its potential occupants, he did not describe any specific and articulable facts that justified the intrusion of Boutin's protected interests. Boutin's car was parked legally in a pull-off area and the officer did not observe any obvious signs of an accident, that the car was disabled, or that the passengers were in any type of distress. *See State v. Burgess*, 657 A.2d 202, 204 (Vt. 1995). In short, the officer's concerns amounted to little more than a hunch. While the officer testified that he was concerned in part because it was dark and

snow covered the ground, "[w]inters are traditionally long in [New Hampshire], and we cannot adhere to a theory that essentially renders [Part I, Article 19] protections seasonal." *Id.*

Because we conclude that Boutin prevails under the State Constitution, we need not reach the federal issue. *See State v. Ball*, 124 N.H. 226, 237 (1983).

Finally, we are cognizant that police officers perform a broad range of community caretaking functions such as helping stranded motorists, returning lost children to their parents, and generally assisting and protecting citizens in need. *See State v. D'Amour*, 150 N.H. 122, 125 (2003). We recognize the importance of these functions and encourage police officers to perform them, but to do so in a nonintrusive manner and without seizing the occupants of a vehicle. *See Ozhuwan v. State*, 786 P.2d 918, 922 (Alaska 1990) (a generalized concern for safety could justify approaching a vehicle and making contact in a nonintrusive manner). For example, in *Boyle*, prior to seizing the driver, the officer pulled next to the vehicle and asked the driver if he had broken down. *Boyle*, 148 N.H. at 306. The officer offered assistance to the driver, but at that point, the driver was free to decline the assistance and leave. *See State v. Licks*, 154 N.H. 491, 493 (2006) (noting that when an officer approaches a person in a parked car and asks questions, the individual is not seized). We also recognize the need to warn passing motorists of an officer's presence, and have previously determined that when there are circumstances that create "a strong need to warn passing traffic of [the police's] presence," an officer can activate his *rear-facing* blue lights without seizing a motorist. *Steeves*, 158 N.H. at 676. We have also determined that an officer may use his spotlight at night "to illuminate what would otherwise be plainly visible in daylight." *Id.* This type of police inquiry strikes a permissible balance between "the governmental interest in the police officer's exercise of his or her community caretaking function and the individual's interest in being free from arbitrary government interference." *Boyle*, 148 N.H. at 308.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS, HICKS and CONBOY, JJ., concurred.