# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
October 5, 2012 Session Heard at Athens[1]

## STATE OF TENNESSEE v. JAMES DAVID MOATS

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for McMinn County**
**No. 09048      Carroll L. Ross, Judge**

---

**No. E2010-02013-SC-R11-CD - Filed March 22, 2013**

---

CORNELIA A. CLARK, J., and WILLIAM C. KOCH, JR., J., dissenting.

We respectfully dissent. We would reverse the judgment of the Court of Criminal Appeals and reinstate the judgment of the trial court, which denied the defendant's motion to suppress because Officer Bige initially "approached [Mr. Moats's] vehicle in her community caretaking function." We are convinced that prior Tennessee decisions have erroneously limited the community caretaking doctrine to consensual police–citizen encounters. We believe the Court should acknowledge this error, overrule the errant precedents, and recognize that the community caretaking doctrine functions as an exception to the Fourth Amendment's warrant and probable cause requirements. We would then conclude that, in this case, the seizure of Mr. Moats was justified under the community caretaking exception. We would not reach the additional question of whether the seizure was supported by reasonable suspicion of criminal activity.

We additionally disagree with the majority's suggestion, in a footnote, that prior Tennessee decisions limiting the community caretaking doctrine to consensual police–citizen encounters derived that rule from article I, section 7 of the Tennessee Constitution. Because the defendant has not argued that Tennessee Constitution article I, section 7 requires such a limitation or grants him greater protection than the Fourth Amendment, we would not address that issue in this appeal.

---

[1] Oral argument was heard in this case on October 5, 2012, in Athens, McMinn County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

## I. Analysis

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and provides that "no warrants shall issue, but upon probable cause . . . ."[2] Likewise, article I, section 7 of the Tennessee Constitution ensures that "the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures," and that "general warrants" lacking particularity and evidentiary support "ought not to be granted." This Court has "long held" that article I, section 7 "is *identical* in intent and purpose to the Fourth Amendment." State v. Williams, 185 S.W.3d 311, 315 (Tenn. 2006) (emphasis added) (citing State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000); Sneed v. State, 221 Tenn. 6, 13, 423 S.W.2d 857, 860 (1968)); see also State v. Donaldson, 380 S.W.3d 86, 92 (Tenn. 2012) ("[I]n the context of traffic stops, the protections afforded by article I, section 7 of the Tennessee Constitution [are] coextensive with the protections afforded by the Fourth Amendment as defined in [Whren v. United States, 517 U.S. 806 (1996)]." (citing State v. Vineyard, 958 S.W.2d 730, 734, 736 (Tenn. 1997))).

A warrantless search or seizure is presumed unreasonable. Kentucky v. King, 131 S. Ct. 1849, 1856 (2011); State v. Day, 263 S.W.3d 891, 901 (Tenn. 2008); State v. Daniel, 12 S.W.3d 420, 424 (Tenn. 2000). This presumption may be overcome, however, if the State demonstrates that the search or seizure was conducted pursuant to one of the exceptions to the warrant requirement. King, 131 S. Ct. at 1856 ("[T]he warrant requirement is subject to certain reasonable exceptions."); Day, 263 S.W.3d at 901 & n.9 (enumerating exceptions); State v. Nicholson, 188 S.W.3d 649, 656 (Tenn. 2006); State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997). Of course, the warrant requirement and other protections afforded by the Fourth Amendment and article I, section 7 are implicated only if a search or seizure occurs, and not every police–citizen interaction results in a search or seizure. Day, 263 S.W.3d at 901; Daniel, 12 S.W.3d at 424. Tennessee courts have generally recognized three levels of police–citizen interactions: (1) the full-scale arrest, which must be supported by probable cause, (2) the brief investigatory detention, which must be supported by reasonable suspicion of criminal activity, and (3) the brief, consensual police–citizen encounter, which does not amount to a seizure and does not require individualized suspicion or objective justification. Day, 263 S.W.3d at 901.

In this appeal, the State concedes that Officer Bige's interaction with Mr. Moats amounted to a warrantless seizure. The State has argued, however, that the seizure of Mr. Moats resulted from the officer's reasonable suspicion of criminal activity and was therefore

---

[2] The Fourth Amendment applies to the States through the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 655 (1961).

permissible under Terry v. Ohio, 392 U.S. 1, 25-26 (1968). Alternatively, the State argues that the seizure was justified by the community caretaking doctrine. The majority concludes that the seizure was not supported by reasonable suspicion and is therefore not a valid Terry stop. The majority also concludes that the community caretaking doctrine applies only to consensual police-citizen encounters, is not an exception to the warrant requirement, and thus can not justify the warrantless seizure in this case.

We agree with the majority that prior Tennessee decisions have limited the community caretaking doctrine to "third tier" consensual police–citizen encounters. This limitation originated with State v. Hawkins, 969 S.W.2d 936, 939 (Tenn. Crim. App. 1997), was adopted by this Court in Williams, 185 S.W.3d at 315, and was subsequently repeated as dicta in a footnote in Day, 263 S.W.3d at 901 n.10.

In Hawkins, the Court of Criminal Appeals supported its determination that the community caretaking doctrine applies only in the context of "third tier" consensual citizen-police encounters with a citation to United States v. Berry, 670 F.2d 583, 591 (5th Cir. 1982). Hawkins, 969 S.W.2d at 939. In Williams, this Court took the same position and cited Hawkins and Cady v. Dombrowski, 413 U.S. 433 (1973), as the supporting authorities. Williams, 185 S.W.3d at 315. Finally, Day repeated this limitation, citing only Williams as support and noting that Williams had cited Hawkins and Cady. Day, 263 S.W.3d at 901 n.10.

These federal decisions, Berry and Cady, do not support limiting the community caretaking doctrine to third-tier consensual encounters. Berry contains no language supporting such a limitation. In fact, the word "community" does not even appear in Berry. Cady actually refutes the idea that the community caretaking doctrine is limited to consensual police–citizen encounters because the Court in Cady applied the doctrine to uphold a *warrantless search* in a circumstance far removed from any consensual citizen—police encounter.

The defendant in Cady was a Chicago police officer who wrecked his car in Wisconsin. The Wisconsin officers who arrived on the scene believed, erroneously, that Chicago police officers were required to carry their service revolvers at all times. Thus, they searched the defendant, his glove box, and the front-seat area of his automobile. The officers found no revolver. After the vehicle had been towed, a Wisconsin officer searched the vehicle's interior and trunk to avoid "the possibility that a revolver would fall into untrained or perhaps malicious hands." Cady, 413 U.S. at 443. Inside the trunk the officer discovered several bloodstained objects, and this discovery prompted a new investigation that culminated in murder charges against the defendant.

The defendant moved to suppress the evidence discovered during the warrantless search. The United States Supreme Court upheld the search as reasonable under the Fourth Amendment. "Local police officers," the Court said, "frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." Cady, 413 U.S. at 441. The search was reasonable, and therefore valid, because it was undertaken to protect the safety of the general public. Cady, 413 U.S. at 447. The Court in Cady nowhere limited the community caretaking doctrine to consensual police–citizen encounters. On the contrary, the Court applied the exception to uphold a warrantless search of the defendant's vehicle.

Only four states, Illinois, New Mexico, North Dakota, and Tennessee, have ever confined the community caretaking doctrine to consensual police–citizen encounters. See People v. Luedemann, 857 N.E.2d 187, 197 n.4 (Ill. 2006). The supreme courts of two of these states, Illinois and New Mexico, have explicitly abandoned this view and abrogated prior decisions to the contrary. See Luedemann, 857 N.E.2d at 198-99 ("[T]he 'community caretaking' doctrine is analytically distinct from consensual encounters and is invoked to validate a search or seizure as reasonable under the fourth amendment. It is not relevant to determining whether police conduct amounted to a seizure in the first place."); State v. Ryon, 2005-NMSC-005, ¶ 20, 108 P.3d 1032, 1041 (2005) (acknowledging that "our description of community caretaking encounters was wrong" and cautioning that certain prior decisions should "not be viewed as limiting the community caretaker exception to voluntary or consensual police-citizen encounters").

Although the United States Supreme Court has not addressed the community caretaking doctrine in the thirty years since Cady, subsequent federal and state decisions (other than those of Illinois, New Mexico, North Dakota, and Tennessee) consistently describe the doctrine as an exception to the Fourth Amendment's restrictions on warrantless searches and seizures. See, e.g., Lockhart-Bembery v. Sauro, 498 F.3d 69, 75 (1st Cir. 2007) (observing that the question is not "whether there was a seizure" because, "under the community caretaking doctrine, police action can be constitutional *notwithstanding* the fact that it constitutes a seizure."); United States v. Coccia, 446 F.3d 233, 237-38 (1st Cir. 2006) ("Generally, a law enforcement officer may only seize property pursuant to a warrant based on probable cause describing the place to be searched and the property to be seized. There are, however, exceptions to this requirement, including the community caretaking exception." (internal footnote and citations omitted)); Ray v. Township of Warren, 626 F.3d 170, 174-77 (3rd Cir. 2010) (describing the community caretaking doctrine as an exception to the warrant requirement but refusing to apply it to justify warrantless searches of homes); United States v. Johnson, 410 F.3d 137, 144-45 (4th Cir. 2005) (applying the "community caretaking

exception" to uphold a warrantless search of a vehicle's glove compartment); United States v. Cervantes, 703 F.3d 1135, 1140 (9th Cir. 2012) (considering "whether the impoundment and subsequent inventory search of Cervantes's vehicle were justified by the community caretaking exception to the Fourth Amendment's warrant requirement"); United States v. Garner, 416 F.3d 1208, 1213 (10th Cir. 2005) (discussing the community caretaking exception to the warrant requirement); Williams v. State, 962 A.2d 210, 216 (Del. 2008) (recognizing the "'community caretaker' or 'public safety' doctrine" as an "exception" to the warrant requirement); Luedemann, 857 N.E.2d at 198-99 ("[T]he 'community caretaking' doctrine is analytically distinct from consensual encounters and is invoked to validate a search or seizure as reasonable under the fourth amendment."); State v. Crawford, 659 N.W.2d 537, 543 (Iowa 2003) ("Implicit in any community caretaking case is the fact that there has been a seizure within the meaning of the Fourth Amendment. Otherwise there would be no need to apply a community caretaking exception."); In Re J.M.E., 162 P.3d 835, 839 (Kan. Ct. App. 2007) (describing the community caretaking doctrine as an "exception" to the Fourth Amendment); Poe v. Commonwealth, 169 S.W.3d 54, 56-59 (Ky. Ct. App. 2005) (recognizing the community caretaking exception but holding it inapplicable to justify the police action at issue); Wilson v. State, 975 A.2d 877, 891 (Md. 2009) (recognizing that the community caretaking function as an exception and enunciating a test for its application); People v. Slaughter, 803 N.W.2d 171, 180 (Mich. 2011) ("We conclude that the community caretaking exception to the warrant requirement applies when a firefighter, responding to an emergency call involving a threat to life or property, reasonably enters a private residence in order to abate what is reasonably believed to be an imminent threat of fire inside."); Trejo v. State, 2008-CT-02133-SCT (¶ 14), 76 So. 3d 684, 689 (Miss. 2011) ("We find no reasoned argument in support of a categorical refusal to apply the community caretaking exception to vehicle stops, and we conclude that the community caretaking function in Cady may apply in contexts other than inventory searches, as the police provide many functions apart from investigating criminal activity." (internal quotation marks and brackets omitted)); State v. Graham, 2007 MT 358, ¶ 25, 175 P.3d 885, 890 (2007) ("The community caretaker doctrine, like the Terry investigative stop, is a recognized exception to the Fourth Amendment's and [the Montana Constitution's] prohibitions against unreasonable searches and seizures."); State v. Bakewell, 730 N.W.2d 335, 338 (Neb. 2007) ("[W]e hereby adopt the community caretaking exception to the Fourth Amendment."); State v. Rincon, 47 P.3d 233, 237 (Nev. 2006) (adopting the community caretaking exception to the Fourth Amendment); State v. Boutin, 13 A.3d 334, 337 (N.H. 2010) (discussing prior New Hampshire cases applying the community caretaking exception); State v. Edmonds, 47 A.3d 737, 752 (N.J. 2012) ("The community-caretaking doctrine is an exception to the warrant requirement, not a roving commission to conduct a nonconsensual search of a home in the absence of exigent circumstances."); Ryon, 2005-NMSC-005, ¶ 20, 108 P.3d at 1041 (acknowledging that its earlier description of community caretaking as a form of consensual encounter "was wrong" and cautioning that certain prior decisions should "not be viewed as limiting the community

caretaker exception to voluntary or consensual police-citizen encounters"); State v. Dunn, 2012-Ohio-1008, at ¶ 22, 964 N.E.2d 1037, 1042 (2012) ("Thus, we hold that the community-caretaking/emergency-aid exception to the Fourth Amendment warrant requirement allows police officers to stop a person to render aid if they reasonably believe that there is an immediate need for their assistance to protect life or prevent serious injury."); Coffia v. State, 2008 OK CR 191, ¶¶ 10-13, 191 P.3d 594, 597-98 (2008) (discussing the community caretaking exception to the Fourth Amendment); State v. Wood, 149 P.3d 1265, 167-68 (Or. Ct. App. 2006) (describing an Oregon statute as a community caretaking exception to the warrant requirement); State v. Deneui, 2009 SD 99, ¶ 33, 775 N.W.2d 221, 235 (2009) ("The community caretaker exception has been recognized only in the context of automobiles by the United States Supreme Court." (citing Cady v. Dombrowski, 413 U.S. 433, 441 (1973))); Wright v. State, 7 S.W.3d 148, 151-52 (Tex. Crim. App. 1999) (describing Cady as recognizing "a community caretaking function of law enforcement as a reasonable exception to the Fourth Amendment's warrant requirement" and acknowledging "the existence of the community caretaking function in Texas"); Provo City v. Warden, 844 P.2d 360, 363-65 (Utah Ct. App. 1992) (upholding a "seizure" as reasonable under the Fourth Amendment based on the community caretaking doctrine); State v. Ford, 2010 VT 39, ¶ 11, 998 A.2d 684, 689 (2010) (recognizing that the "community caretaking exception" is distinct from the emergency aid or emergency assistance exception to the Fourth Amendment warrant requirement); Knight v. Commonwealth, 734 S.E.2d 716, 720 (Va. Ct. App. 2012) ("Searches and seizures conducted without a warrant are presumptively invalid. However, Virginia recognizes a 'community caretaker' exception to the Fourth Amendment warrant requirement." (internal citations omitted)); State v. Kinzy, 5 P.3d 668, 676 (Wash. 2000) ("The community caretaking function exception recognizes that a person may encounter police officers in situations involving not only emergency aid, but also involving a routine check on health and safety."); Ullom v. Miller, 705 S.E.2d 111, 120 (W.Va. 2010) ("The 'community caretaker' doctrine is a widely recognized exception to the general warrant requirement of the Fourth Amendment of the United States Constitution."); State v. Kramer, 2009 WI 14, ¶¶ 16-46, 759 N.W.2d 598, 603-06, 608-12 (2009) (discussing and applying the community caretaking exception).

The weight of these authorities, coupled with Cady itself, convinces us that this Court erred in Williams by embracing the premise of Hawkins that the community caretaking doctrine is limited to consensual police–citizen encounters.[3] We would acknowledge this error, disavow this inaccurate statement of law, and follow the overwhelming majority of other jurisdictions that recognize the community caretaking doctrine as an exception to the Fourth Amendment's warrant and probable cause requirements.

_____

[3] Justice Clark acknowledges that repeating this inaccurate premise in dicta in Day was also error.

Of course, this Court has the authority to interpret the Tennessee Constitution in a way that provides more protection to Tennessee's citizens than the United States Constitution. State v. Watkins, 362 S.W.3d 530, 554-55 (Tenn. 2012). Twice before we have exercised this authority and held that article I, section 7 imposes stricter standards than the Fourth Amendment in certain circumstances. See State v. Jacumin, 778 S.W.2d 430, 435-36 (Tenn. 1989) (adopting a different standard for evaluating the sufficiency of an affidavit submitted in support of a request for a search warrant); State v. Lakin, 588 S.W.2d 544, 549 (Tenn. 1979) (acknowledging a more restrictive application of the open fields doctrine under the Tennessee Constitution).

We are puzzled, however, by the majority's suggestion that Williams provides another example of this Court interpreting article I, section 7 more strictly than the Fourth Amendment. As we previously noted, Hawkins and Williams cited only federal authority for the proposition that the community caretaking doctrine is limited to consensual police–citizen encounters. Neither Hawkins nor Williams explicitly based the limitation on article I, section 7. To the contrary, Williams described article I, section 7 as "*identical* in intent and purpose to the Fourth Amendment." Williams, 185 S.W.3d at 315 (emphasis added).[4] Williams is also devoid of the sort of analysis we typically apply when we explore whether a provision of the Tennessee Constitution requires an interpretation that diverges from the federal courts' interpretation of a corresponding provision of the United States Constitution. See, e.g., Watkins, 362 S.W.3d at 554-56; Vineyard, 958 S.W.2d at 733-34. Williams nowhere suggests that its holding was based on the Tennessee Constitution or that article I, section 7 should be construed more narrowly than the Fourth Amendment in the context of the community caretaking doctrine.

Furthermore, this appeal presents no opportunity to interpret article I, section 7 differently than the Fourth Amendment with respect to the community caretaking doctrine. The defendant has now had three opportunities to brief the issue. Yet, the defendant has not argued in this Court, or at any other stage of this case, that the Tennessee Constitution affords him greater protection than the Fourth Amendment in this context. Nor has he argued that some aspect of our constitution limits the community caretaking doctrine to consensual police–citizen encounters or precludes recognizing the doctrine as an exception to the warrant requirement.

---

[4] This observation is hardly unique to Williams. See, e.g., Donaldson, 380 S.W.3d at 92 ("[I]n the context of traffic stops, the protections afforded by article I, section 7 of the Tennessee Constitution [are] coextensive with the protections afforded by the Fourth Amendment."); Binette, 33 S.W.3d at 218; Vineyard, 958 S.W.2d at 733; Sneed, 221 Tenn. at 13, 423 S.W.2d at 860.

We would acknowledge that <u>Hawkins</u>, <u>Williams</u>, and <u>Day</u> erred by limiting <u>Cady</u>'s community caretaking doctrine to consensual police–citizen encounters. We would disavow that limitation, recognize the community caretaking doctrine as an exception to the Fourth Amendment's warrant and probable cause requirements, and determine whether the exception applies in this case.

As with all Fourth Amendment questions, the touchstone of the analysis is reasonableness. See <u>Brigham City v. Stuart</u>, 547 U.S. 398, 403 (2006). Reasonableness is judged by an objective standard. <u>Id.</u> at 404-05. Thus, application of the community caretaking exception turns on whether the challenged police action is objectively reasonable considering all of the surrounding circumstances. See, e.g., <u>Lockhart-Bembery</u>, 498 F.3d at 75 ("The ultimate inquiry is whether, under the circumstances, the officer acted 'within the realm of reason.' Reasonableness does not depend on any particular factor; the court must take into account the various facts of the case at hand." (internal citations omitted)); <u>State v. Wixom</u>, 947 P.2d 1000, 1002 (Idaho 1997) ("In analyzing community caretaking function cases, Idaho courts have adopted a totality of the circumstances test. The constitutional standard is whether the intrusive action of the police was reasonable in view of all the surrounding circumstances." (internal citation, quotation marks, and alterations omitted)); <u>State v. D'Amour</u>, 834 A.2d 214, 218 (N.H. 2003) ("To justify a seizure under the community caretaking exception, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the community caretaking activity." (internal brackets omitted)); <u>State v. Diloreto</u>, 850 A.2d 1226, 1234 (N.J. 2004) (requiring community caretaking searches to be "objectively reasonable under the totality of the circumstances").

Courts and commentators have developed various analytical tests for determining whether particular police activities fall within the community caretaking exception. However, "[n]o single set of specific requirements for applicability of the community caretaker exception has been adopted by a majority of those states recognizing the exception." <u>Ullom</u>, 705 S.E.2d at 122; see also <u>Deneui</u>, 2009 SD 99, ¶¶ 36-41, 775 N.W.2d at 237-39 (discussing the various tests); Michael R. Dimino, Sr., <u>Police Paternalism: Community Caretaking, Assistance Searches, and Fourth Amendment Reasonableness</u>, 66 Wash. & Lee L. Rev. 1485, 1498-1512 (2009) (discussing various community caretaking tests); John F. Decker, <u>Emergency Circumstances, Police Responses, and Fourth Amendment Restrictions</u>, 89 J. Crim. L. & Criminology 433, 457-532 (1999) (surveying case law on the community caretaking exception).

We would hold that a warrantless seizure of a parked car is justified under the community caretaking exception if the State establishes that (1) the officer possessed specific and articulable facts which, viewed objectively and in the totality of the circumstances,

reasonably warranted a conclusion that a community caretaking action was needed, such as the possibility of a person in need of assistance or the existence of a potential threat to public safety; and (2) the officer's behavior and the scope of the intrusion were reasonably restrained and tailored to the community caretaking need.

The State should not be required to show that the officer was motivated *solely* by community caretaking considerations. The majority suggests that Cady imposed this sort of subjective requirement when the Court described community caretaking as "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." Nowhere does Cady *require* that a community caretaking activity must be "totally divorced" from crime control, especially in a subjective sense. The quotation above simply makes the unremarkable observation that law enforcement officers sometimes do things besides investigate crime. See Kramer, 2009 WI 14, ¶ 32, 759 N.W.2d at 608. Even when performing community caretaking functions, peace officers are typically, if not always, attuned to the possibility that they may discover evidence of a crime in any given situation. Such considerations do not defeat Fourth Amendment reasonableness.

The United States Supreme Court has made it clear that "[a]n action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed objectively, justify the action. The officer's subjective motivation is irrelevant." Brigham City, 547 U.S. at 404 (internal citations, quotation marks, and brackets omitted); cf. Michigan v. Fisher, 558 U.S. 45, 47 (2009) (per curiam) (noting that the similar "emergency aid" exception to the Fourth Amendment "does not depend on the officers' subjective intent . . . . It requires only 'an objectively reasonable basis for believing'" that immediate aid is needed (quoting Brigham City, 547 U.S. at 406)). In a similar vein, this Court has held that a traffic stop can be justified by probable cause under article I, section 7 "without regard to the subjective motivations of police officers." Vineyard, 958 S.W.2d at 736.

Requiring the State to prove that a police action was motivated solely by community caretaking concerns would inappropriately shift the focus to the officer's (irrelevant) subjective motivations. See Kramer, 2009 WI 14, ¶ 30, 759 N.W.2d at 608 (concluding that the "totally divorced" language from Cady does not mean that if the police officer has any subjective law enforcement concerns, he cannot be engaging in a valid community caretaker function, and requiring only an objectively reasonable basis for the community caretaker function). Thus, the first prong of our proposed test would require the State to show that the officer possessed specific and articulable facts which, viewed objectively and in the totality of the circumstances, reasonably warranted a conclusion that a community caretaking action was needed.

Determining whether police action is objectively reasonable in light of the circumstances requires careful consideration of the facts of each case. Circumstances that should be considered include the nature and level of distress exhibited by the citizen, the location, the time of day, the accessibility and availability of assistance other than the officer, and the risk of danger if the officer provides no assistance. See Salinas v. State, 224 S.W.3d 752, 756 (Tex. App. 2007); State v. Pinkard, 2010 WI 81, ¶ 42, 785 N.W.2d 592, 605 (2010).

The proof in this record shows that Officer Bige saw a person sitting alone in the driver's seat of a vehicle parked in a deserted commercial parking lot at approximately 2:00 a.m. The vehicle's headlights were on, but the engine was not running. The businesses nearest the vehicle, a bank and a grocery store, were closed, but an adjacent gas station was open. No-loitering signs were posted. Local police had been asked to conduct extra patrols of the parking lot under the suspicion that it was being used for drug transactions.

Officer Bige noticed the vehicle on her initial patrol, circled it, but continued her patrol of the area, and did not immediately approach the vehicle. She returned approximately five minutes later and saw that the vehicle and its occupant were still in the parking lot, with the vehicle's lights still on. Officer Bige parked behind the vehicle but, according to a statement by defense counsel at the suppression hearing, did not block it in. Officer Bige activated her blue lights, called in the license plate number, and approached the vehicle. She said she checked the vehicle because it was "strange that a car would be . . . in a parking lot at almost . . . 2:00 a.m. with the lights on." As she approached, Officer Bige noticed that the driver's side window was open, and she asked Mr. Moats if he was okay. He responded that he was fine.

The circumstances leading up to this encounter provided specific and articulable facts which, when viewed objectively, would suggest to a reasonable officer that a community caretaking intervention was needed. Under the totality of these circumstances, Officer Bige could have reasonably concluded that the defendant needed assistance due to a vehicle malfunction, a medical emergency, or even that he may have been the victim of a crime.

These facts also demonstrate that Officer Bige's actions were restrained and that the scope of the intrusion was tailored to the community caretaking need. Officer Bige, the only officer on the scene, activated her blue lights, a reasonable precaution given the time of night.[5] She called in the defendant's license plate number, also a reasonable precaution given

_____

[5]See State v. Walters, 1997-NMCA-013, ¶ 22, 934 P.2d 282, 288 (1996) (recognizing that emergency lights convey a signal that an officer approaching a car at night "presents no threat to the occupant of the car").

that officers do not know who is in a car or how that person might react.[6] She approached the driver's side window and posed a single question, inquiring about the defendant's welfare. When Officer Bige saw an open beer can in the cup holder and noticed the defendant's demeanor—"disoriented, very slow to speak, very sleepy acting"—she then had reasonable suspicion of criminal activity and was justified in extending the seizure and administering field sobriety tests. See People v. McDonough, 940 N.E.2d 1100, 1110 (Ill. 2010); Ullom, 705 S.E.2d at 123-24.

Accordingly, we would hold that the warrantless seizure in this case was justified by the community caretaking exception to the Fourth Amendment's warrant and probable cause requirements. No two Fourth Amendment cases are exactly alike. However, our conclusion is consistent with numerous decisions from other jurisdictions that uphold the validity of warrantless seizures—in which officers check on the occupants of parked cars—under the community caretaking exception. See, e.g., McDonough, 940 N.E.2d at 1109-10 (applying the community caretaking exception when an officer stopped to investigate a stopped car and discovered the occupant drunk); Dittmar, 954 N.E.2d at 271 (applying the community caretaking exception and rejecting the defendant's argument that the officer should have used amber lights or hazard lights instead of blue lights); People v. Heap, No. 2-09-0477, 2011 WL 9686285, at *4 (Ill. App. Ct. May 9, 2011) (unpublished) (applying the caretaking exception and noting that it would have been "irresponsible" for an officer to fail to stop and check on a parked vehicle); People v. Laake, 809 N.E.2d 769, 772-73 (Ill. App. Ct. 2004) (applying the caretaking exception when an officer checked a parked car in an isolated area and found the occupant drunk); City of Mandan v. Gerhardt, 2010 ND 112, ¶ 12, 783 N.W.2d 818, 822 (2010) (upholding a trial court's finding that "the initial contact with the defendant" was reasonable when the defendant "was in a nearly deserted parking lot at 2 a.m." in January – "it would have been unreasonable for the office[r] not to check and determine if the occupant of the pickup was in need of assistance"); State v. Rinehart, 2000 SD 135, ¶ 11, 617 N.W.2d 842, 844 (S.D. 2000) (upholding a community caretaking stop of a slow-moving vehicle "to make sure everything was all right"); Ullom, 705 S.E.2d at 121-23 (upholding an officer's "safety check" of a parked vehicle that included blocking in the vehicle); Kramer, 2009 WI 14, ¶¶ 37-48, 759 N.W.2d at 610-12 (upholding a community caretaking stop despite the officer's mixed motives in investigating a parked car); State v. Hammersley, 2012 WI App 118, ¶ 5, 822 N.W.2d 737 (2012) (unpublished) ("[T]he possibility of assistance being needed, based on unusual vehicle conduct, is what forms the basis of a bona fide community caretaker function."); State v. Truax, 2009 WI App 60, ¶¶ 17-21, 767 N.W.2d 369, 375 (2009) (upholding a community caretaking investigation of a parked car and noting

---

[6]See People v. Dittmar, 954 N.E.2d 263, 271 (Ill. App. Ct. 2011) (finding that an officer "informing the dispatcher of the make, model, and license plate number" of a car is "consistent with a public-safety purpose").

that an officer should not delay in checking a car on the side of the road at night in a non-urban area because it could indicate a breakdown or medical emergency); see also Mary Elisabeth Naumann, The Community Caretaker Doctrine: Yet Another Fourth Amendment Exception, 26 Am. J. Crim. L. 325, 339 n.71 (1999) (collecting additional cases in which courts have applied the community caretaking exception to an officer's safety check of a parked vehicle); but see State v. Kurth, 813 N.W.2d 270, 277-80 (Iowa 2012) (finding the exception inapplicable when the officer blocked in the vehicle of the defendant, whom the officer suspected had just run over a traffic sign); Hernandez v State, 376 S.W.3d 863, 876 (Tex. App. 2012) (per curiam) (finding the caretaking exception inapplicable when the officer, investigating a car in a parking lot at 2 a.m., apparently blocked the car in with his cruiser, activated his dashboard camera, shined his spotlight on the driver, and asked, "what are you doing?").

As a practical matter, the limitation adopted in Williams may deter Tennessee's police officers from acting as community caretakers—a result that could be detrimental to Tennessee's citizens. As one court has explained, the modern police officer is a "jack-of-all-emergencies" shouldering "multiple responsibilities." Williams, 962 A.2d at 216. The Delaware Supreme Court also observed that police officers are

> expected to aid individuals who are in danger of physical harm, assist those who cannot care for themselves, and provide other services on an emergency basis. To require reasonable suspicion of criminal activity before police can investigate and render assistance in these situations would severely hamstring their ability to protect and serve the public.

Williams, 962 A.2d at 217 (internal footnote and quotation marks omitted).

Indeed, as many courts have recognized, the public has a strong interest in encouraging the police to act as community caretakers. See, e.g., Kramer, 2009 WI 14, ¶ 42, 759 N.W.2d at 611 ("[T]he public has a substantial interest in police offering assistance to motorists who may need assistance, especially after dark and in areas . . . where assistance may not be near at hand."). Courts have even described community caretaking as a duty. See, e.g., McDonough, 940 N.E.2d at 1109-10 ("[Because t]he public has a substantial interest in ensuring that police offer assistance to motorists who may be stranded . . . . a law enforcement officer has the right to make a reasonable investigation of vehicles parked along roadways to offer such assistance as might be needed and to inquire into the physical condition of persons in vehicles."); State v. Goebel, 307 N.W.2d 915, 917 (Wis. 1981) ("[Community caretaking contacts] are not only authorized, but constitute an important duty of law enforcement officers.").

-12-

There is nothing unreasonable about an exception to the warrant requirement that allows peace officers to perform their "right" and "duty" to act as community caretakers. "It must always be remembered that what the Constitution forbids is not all searches and seizures, but [only] unreasonable searches and seizures." <u>Elkins v. United States</u>, 364 U.S. 206, 222 (1960). Because searches or seizures premised on legitimate caretaking concerns are not unreasonable, validating them does not erode any of the constitutional protections or diminish any of the constitutional rights we all hold so dear.

For these reasons, we respectfully dissent. Instead, we would reverse the judgment of the Court of Criminal Appeals and reinstate the trial court's judgment denying the motion to suppress because Officer Bige approached Mr. Moats's "vehicle in her community caretaking function." Because the seizure was justified by the community caretaking exception, we would decline to address the State's alternative argument that the seizure was based on reasonable suspicion of criminal activity.

_____
CORNELIA A. CLARK, JUSTICE


_____
WILLIAM C. KOCH, JR., JUSTICE